UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

MARCOS POVENTUD,                                         :

                              Plaintiff,                 :

                   -against-                             :        07 CV 3998 (DAB)(THK)

CITY OF NEW YORK; DANIEL TOOHEY;                         :
"FRANKIE" ROSADO,  CHRISTOPHER DOLAN,
and KENNETH UMLAUFT, Individually and as                 :
Members of the New York City Police Department,

                              Defendants.                :

-------------------------------------------------------------------x


## PLAINTIFF'S MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS' MOTION
## FOR SUMMARY JUDGMENT


JULIA P. KUAN, ESQ.  (JK-3822)
Romano & Kuan, PLLC
100 Lafayette Street, Suite 401
New York, New York 10013
(212) 274-0777

JOEL B. RUDIN, ESQ.  (JR-5645)
Law Offices of Joel B. Rudin
200 West 57th Street, Suite 900
New York, New York 10019
(212) 752-7600

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES.................................................................................... i

INTRODUCTION................................................................................................. 1

STATEMENT OF FACTS.................................................................................... 2

ARGUMENT

I.     PLAINTIFF'S AMENDED COMPLAINT STATES A VALID CLAIM AGAINST THE INDIVIDUAL POLICE OFFICER-DEFENDANTS FOR VIOLATING HIS CONSTITUTIONAL RIGHT TO DUE PROCESS AND A FAIR TRIAL AND THERE ARE DISPUTED ISSUES OF FACT THAT A JURY MUST DETERMINE.................................................................................. 7

     A.    Standard for Deciding a Motion for Summary Judgment............... 7

     B.    Plaintiff's First Cause of Action States a Valid Claim for Relief Under § 1983............................................................................ 7

          1.    Essential Elements of a *Brady* or Due Process Claim Under § 1983................................................................. 8

          2.    A Reasonable Jury Could Find That Defendants Violated, Or Caused The Violation Of, Plaintiff's Constitutional Rights At His Trial...................................... 9

          3.    Defendants' *Brady* Violation Caused Plaintiff to Suffer Harm............................................................................ 13

II.    *HECK V. HUMPHREY* DOES NOT BAR PLAINTIFF'S § 1983 CLAIMS................................................................. 13

     A.    *Heck* Does Not Apply Because Plaintiff Is Not In Custody........... 13

     B.    *Heck v. Humphrey* Does Not Bar Mr. Poventud's Claim Because the Claim Does Not Necessarily Imply the Invalidity of Any Outstanding Conviction...................................... 15

III.   COLLATERAL ESTOPPEL DOES NOT BAR PLAINTIFF'S INNOCENCE CLAIM...................................................... 19

*Page*

IV.   PLAINTIFF STATES A VALID CLAIM FOR MUNICIPAL
      LIABILITY AND THE EVIDENCE SHOWS FACTUAL
      ISSUES PRECLUDING SUMMARY JUDGMENT.................................   20

V.    DEFENDANT UMLAUFT IS NOT ENTITLED TO
      QUALIFIED IMMUNITY..........................................................................   24

VI.   PLAINTIFF'S NEGLIGENT DISCIPLINE CLAIM IS VALID...............   24

CONCLUSION...........................................................................................................   25

## TABLE OF AUTHORITIES

*Case*                                                                          *Page*

*Adickes v. S. H. Kress & Co.*, 398 U.S. 144 (1970)................................................  8

*Amaker v. Weiner*, 179 F.3d 48 (2d Cir. 1999)......................................................  18

*Amnesty Am. v. Town of West Hartford*, 361 F.3d 113 (2d Cir. 2004)...................  7, 20, 21

*Baba-Ali v. City of New York*, 979 F. Supp. 268 (S.D.N.Y. 1997).........................  18, 22

*Banks v. Dretke*, 540 U.S. 668 (2004)....................................................................  11

*Batista v. Rodriguez*, 702 F.2d 393 (2d Cir. 1983)...................................................  22

*Bordanaro v. McLeod*, 871 F.2d 1151 (1st Cir. 1989)............................................  23n

*Bellis v. Tokio Marine & Fire Ins. Co.*, No. 93 Civ. 6549,
    2002 WL 193149 (S.D.N.Y. Feb. 7, 2002).....................................................  13

*Brady v. Maryland*, 373 U.S. 83 (1963)...................................................................  7

*Brooks v. Worthy*, 2011 WL 1748544 (E.D. Mich. May 2, 2011)..........................  17

*Brennan v Mead*, 81 A.D.2d 821 (2d Dept. 1981)...................................................  19n

*Burt v. Aleman*, No. 05-CV-4493, 2008 WL 1927371
    (E.D.N.Y. Apr. 30, 2008)...............................................................................  9

*Cannon v. Alabama*, 558 F.2d 1211 (5th Cir. 1977)................................................  12

*City of Canton v. Harris*, 489 U.S. 378 (1989)........................................................  20

*Clay v. Allen*, 242 F.3d 679, 681 (5th Cir. 2001)....................................................  15, 16

*Connick v. Thompson*, 131 S. Ct. 1350 (2011)........................................................  18, 20

*Covington v. City of New York*, 171 F.3d 117 (2d Cir. 1999)..................................  16

*Davis v. Hanna*, 97 A.D.2d 943 (2d Dept. 1990).....................................................  19

*Davis v. Zain*, 79 F.3d 18 (5th Cir. 1996)................................................................  16

*Case*                                                                                      *Page*

*Del Real v. Gomez*, 330 Fed. Appx. 110, 2009 WL 1283879
    (7th Cir. 2009)............................................................................. 16

*DiBlasio v. City of New York*, 102 F.3d 654 (2d Cir. 1996)..................................... 17

*Disorbo v. Hoy*, 74 Fed. Appx. 101, 2003 WL 22037275 (2d Cir. 2003).............. 21-22

*Eifert v. Bush*, 27 A.D. 2d 950 (2d Dept. 1967)........................................................ 25

*Farrell v. Burke*, No. 97-CV-5708, 2004 WL 2813175
    (S.D.N.Y. Dec. 8, 2004)................................................................. 1, 14

*Fiacco v. City of Rensselaer*, 783 F.2d 319 (2d Cir. 1986)......................................... 21, 22

*Frank v. Relin*, 1 F.3d 1317 (2d Cir. 1993)............................................................... 24

*Gentile v. County of Suffolk*, 926 F.2d 142 (2d Cir. 1991)...................................... 21, 22, 23

*Goudy v. Basinger*, 604 F.3d 394 (7th Cir. 2010)................................................... 12

*Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985)................................... 23n

*Hall v. Smathers*, 240 N.Y. 486 (1925)................................................................. 25

*Heck v. Humphrey*, 512 U.S. 477 (1994).............................................................. 1, 15, 18

*Henry v. County of Shasta*, 132 F.3d 512 (9th Cir. 1997)...................................... 23n

*Hernandez v. Terrones*, 397 Fed. Appx. 954 (5th Cir. 2010)................................. 8

*Higazy v. Templeton*, 505 F.3d 161 (2d Cir. 2007)................................................ 22

*Huang v. Johnson*, 251 F.3d 65 (2d Cir. 2001)...................................................... 14

*Hydro Investors, Inc. v. Trafalgar Power, Inc.*, 227 F.3d 8 (2d Cir. 2000)............ 22

*Ienco v. City of Chicago*, 286 F.3d 994 (7th Cir. 2002)......................................... 9

*In re Bach's Estate*, 81 Misc. 2d 479 (N.Y. Sur. 1975)........................................... 19

*Jackson v. Barnes*, 2009 WL 1096276 (C.D. Cal. April 21, 2009)....................... 17

| *Case* | *Page* |
|---|---|
| *Jean v. Collins*, 221 F.3d 656 (4th Cir. 2000) | 8 |
| *Johnson v. Jones*, 515 U.S. 304 (1995) | 24 |
| *Kelleran v. Andrijevic*, 825 F.2d 692 (1987) | 19 |
| *Khandhar v. Elfenbein*, 943 F.2d 244 (2d Cir. 1991) | 20 |
| *Kyles v. Whitley*, 514 U.S. 419 (1995) | 8 |
| *Malley v. Briggs*, 475 U.S. 335 (1986) | 13 |
| *McDowell v. Dixon*, 858 F.2d 945 (4th Cir. 1988) | 11 |
| *Miner v. City of Glen Falls*, 999 F.2d 655 (2d Cir. 1993) | 8 |
| *Monroe v. Pape*, 365 U.S. 167 (1961) | 13 |
| *Myers v. County of Orange*, 157 F.3d 66 (2d Cir. 1998) | 13 |
| *Napue v. Illinois*, 360 U.S. 264 (1959) | 9 |
| *Nat'l Union Fire Ins. Co. v. Turtur*, 892 F.2d 199 (2d Cir. 1989) | 12 |
| *Newsome v. McCabe*, 256 F.3d 747 (7th Cir. 2001) | 8 |
| *Newsome v. McCabe*, 260 F.3d 824 (7th Cir. 2001) | 24 |
| *Olsen v. Correiro*, 189 F.3d 52 (1st Cir. 1999) | 13, 16-17 |
| *Pennecom B.V. v. Merrill Lynch & Co.*, 372 F.3d 488 (2d Cir. 2004) | 19 |
| *People v. Maldonado*, 97 N.Y.2d 522 (2002) | 5 |
| *People v. Poventud*, 10 Misc.3d 337 (Sup. Ct., Bx. Co. 2005) | 11, 12 |
| *Pyle v. Kansas*, 317 U.S. 213 (1942) | 9 |
| *Ricciuti v. City of New York*, 124 F.3d 123 (2d Cir. 1997) | 9 |
| *Ricciuti v. N.Y.C. Transit Authority*, 941 F.2d 119 (2d Cir. 1991) | 20-21 |

| *Case* | *Page* |
|---|---|
| *Ryan v. N.Y. Tele. Co.*, 62 N.Y.2d 494 (1984) | 19 |
| *Sanchez v. Bellefeuille*, No. 90-CV-1081, 1992 WL 88050 (N.D.N.Y. Apr. 27, 1992) | 19n |
| *Skinner v. Switzer*, 131 S. Ct. 1289 (2011) | 18 |
| *Smith v. City of Fontana*, 818 F.2d 1411 (9th Cir. 1987) | 20 |
| *Smith v. Gonzales*, 222 F.3d 1220 (10th Cir. 2000) | 16 |
| *Somerville v. Hagood*, 2002 WL 31246773 (N.D. Tex. Aug. 12, 2002) | 17 |
| *Spell v. McDaniel*, 824 F.2d 1380 (4th Cir. 1987) | 20, 21 |
| *Spencer v. Kemna*, 523 U.S. 1 (1998) | 14 |
| *Stein v. County of Westchester*, 410 F. Supp.2d 175 (S.D.N.Y. 2006) | 14, 18 |
| *Strickler v. Greene*, 527 U.S. 263 (1999) | 8, 11 |
| *Su v. Filion*, 335 F.3d 119 (2d Cir. 2003) | 11 |
| *Sullivan v. Breese*, 160 A.D.2d 997 (2d Dept. 1990) | 19 |
| *United States v. Bagley*, 473 U.S. 667 (1985) | 8 |
| *United States v. Gregg*, 463 F.3d 160 (2d Cir. 2006) | 19n |
| *Vann v. City of New York*, 72 F.3d 1040 (2d Cir. 1995) | 7, 20, 21 |
| *Vavolizza v. Krieger*, 33 N.Y.2d 351 (1974) | 19 |
| *Walker v. City of New York*, 974 F.2d 293 (2d Cir. 1992) | 18 |
| *Wallace v. Kato*, 549 U.S. 384 (2007) | 16 |
| *Warner v. Orange County Dep't of Probation*, 115 F.3d 1068 (2d Cir. 1997) | 17, 22 |
| *White v. McKinley*, 519 F.3d 806 (8th Cir. 2008) | 24 |

| *Case* | *Page* |
|---|---|
| *White v. McKinley*, 605 F.3d 525 (8th Cir. 2010).................................................. | 8, 9 |
| *Wilkinson v. Dotson,* 544 U.S. 74 (2005)............................................................... | 14, 15-16 |
| *W.R. Grace & Co. v. Zotos Int'l, Inc.*, No. 98-CV-838S, 2004 WL 5669337 (W.D.N.Y. May 14, 2004)............................................ | 23n |
| *Zahrey v. City of New York*, No. 98-CV-4546, 2009 WL 54495 (S.D.N.Y. Jan. 7, 2009)............................................................................. | 8-9 |
| *Zahrey v. Coffey*, 221 F.3d 342 (2d Cir. 2002)...................................................... | 9, 13, 22 |

**Constitution and Statutory Provisions**

United States Code

|  |  |
|---|---|
| Title 42, Section 1983.................................................................... | 8 |

Federal Rules of Civil Procedure

|  |  |
|---|---|
| Section 56(a)................................................................................... | 7 |

New York Criminal Procedure Law

|  |  |
|---|---|
| Section 440.10................................................................................. | 5 |

**Other**

| | |
|---|---|
| 4 Sand, et al., *Modern Federal Jury Instructions: Civil* § 87.03, at 87-151 (Matthew Bender 1995)............................................................. | 8 |
| 30 C.J.S. Employer-Employee § 202...................................................... | 25 |

## INTRODUCTION

After enduring *nine years* in the Gulag – *nine years* of rape, sodomy, physical assault, attempted suicide, and unimaginable depression and stress – plaintiff was given a "choice." He could continue to maintain his innocence and face years of additional trauma, which he believed he would not survive, until he finally received a new trial. Or, he could admit a crime he had not committed and be *released – immediately*. The violent crimes charged in the indictment would be dismissed; he would have to admit a much less serious, non-violent offense. Plaintiff chose the certainty of freedom. And now, the defendants who caused him to have to make this awful choice ask to escape any consequence for their wrongdoing. They argue that plaintiff's acceptance of a one-year sentence, which he already had served, "remedied" their violation of his constitutional right to a fair trial, and thus they "caused him no harm." Defts. Mem. 17. But who will give Marcos Poventud back his other eight years? Who will undo his prison trauma?

*Heck v. Humphrey*, 512 U.S. 477 (1994), does not compel the unjust, inhumane result defendants' advocate. As this Court squarely held in *Farrell v. Burke*, No. 97-CV-5708, 2004 WL 2813175 (S.D.N.Y. Dec. 8, 2004) (Batts, D.J.), *aff'd on other grounds*, 449 F.3d 470 (2d Cir. 2006), *Heck* does not apply where, as here, the plaintiff *is not in custody* and thus is ineligible for habeas corpus relief, and where the trial conviction and sentence he challenges *already have been invalidated*. Section 1983 entitles any person harmed by the violation of his federal constitutional rights to recover damages against the wrongdoer. The defendants' suppression of *Brady* material was such a constitutional violation. Poventud's one-year plea may reduce his entitlement to damages by the one year he "agreed" to, but he is entitled to all his other damages flowing from his already-invalidated conviction. Plaintiff *is* innocent. But he is not required to *prove* his innocence to recover damages under Section 1983.

## STATEMENT OF FACTS

On March 6, 1997, Younis Duopo, while driving a livery cab, was robbed by two men and shot.  Defendant Frank Rosado purportedly found a wallet on the floor next to the front passenger seat of Duopo's cab containing two, seven-year-old photo identification cards of Francisco Poventud. While the detective assigned to head the investigation, defendant Christopher Dolan, was off duty, his supervisor, Det.-Sgt. (and defendant) Kenneth Umlauft, showed Duopo a photo array containing a photocopy of one of Francisco's identification cards, and five photocopies of fillers superimposed over the same card.  Plt. 56.1 ¶¶ 115, 126-28.[1]  When Duopo positively identified Francisco, Umlauft, consistent with his training and NYPD policy, asked Duopo to sign his name next to Francisco's photo. ¶¶ 129-31.  But Duopo's identification was mistaken.  Umlauft and his fellow detectives discovered that Francisco was incarcerated when the crime was committed. ¶ 138.

The defendants then elected to show Duopo a photo array containing the photograph of Francisco's younger brother, Marcos.  The first time Duopo was shown the array, he made no identification. ¶ 142.  Returning a second time, detectives showed Duopo the same array and wrote in a complaint follow-up report, or "DD5," that the result was "negative." ¶¶ 143-44.  Under NYPD parlance, this meant that Duopo had not identified the photograph of the suspect as the perpetrator. ¶ 147.  Determined to obtain an identification, the next day, Dolan showed Duopo plaintiff's single photo, and then Defendant Toohey followed up by showing Duopo another array, this one containing a photo of plaintiff and five new fillers.  Unsurprisingly, having been shown plaintiff's image *four times*, Duopo selected him, claiming he was the shooter. ¶¶ 148-149.  Marcos was formally arrested,

---

[1] Plaintiff's Response to Defendants' Rule 56.1 Statement, which includes sequentially numbered Additional Facts, will be referred to as "Plt. 56.1" followed by the paragraph number, or, where the context is clear, just the paragraph number.  Reference to Defendants' 56.1 will be as follows: "Defts. 56.1".

identified at a lineup, and indicted.  ¶¶ 153-54.  Robert Maldonado became his co-defendant when Duopo identified him as well.  Defts. 56.1 ¶ 24.

Duopo's initial misidentification of a demonstrably innocent man was a serious problem for the defendants, but they "solved" it.  It was the practice of Bronx ADAs preparing the Criminal Court complaint, the grand jury presentation, a Voluntary Disclosure Form, and officers' *Wade* hearing and trial testimony to request disclosure of all police-arranged identifications.  Plt. 56.1 ¶¶ 155, 157, 160, 165-66.  In violation of their training and the policy and practice of the NYPD, the defendants did not create any DD5 memorializing Duopo's mistaken identification of Francisco, did not preserve the array, and did not disclose it to the Bronx prosecutors.  ¶¶ 134, 145-46, 156, 158, 162-64.  As a result, the prosecution never disclosed the Francisco identification procedure to the defense.  ¶¶ 29, 161, 169-70, 173-74, 198, 251.

Shortly before trial, according to the assigned prosecutor, ADA Gregg Turkin, he asked Umlauft about documents in the D.A.'s file apparently containing photocopies of different sized heads superimposed over Francisco Poventud's identification card.  Umlauft said the photos were from an array he had been "trying" to put together, but did not say he had completed it.  Turkin, knowing Francisco Poventud had been in jail, believed the array being prepared must have concerned Marcos Poventud.  Umlauft did not tell Turkin during this conversation (or ever) that he had shown any photo of Francisco to Duopo, nor did Turkin see any copy of Francisco's photo with Duopo's signature on it.  ¶¶ 179-185.

During a pretrial *Wade* hearing, the court grew concerned about the suggestive nature of Duopo's photo identification of plaintiff and directed the prosecutor to call Duopo to establish his independent ability to make reliable identifications.  ¶¶ 175-76.  Duopo testified but did not disclose the Francisco Poventud identification procedure.  ¶ 177.  Defendants Dolan, Rosado and Toohey

-3-

testified about the various identification procedures, but not Francisco's. ¶¶ 173-74 . As a result, the court admitted Duopo's lineup and in-court identifications of plaintiff. ¶ 178.

During the trial, both defense counsel questioned the reason for the discrepancy between one of the original Francisco Poventud identification cards and a photocopy they had received. ¶ 187. Turkin responded, on the record, by reiterating that Francisco had been quickly eliminated as a suspect and that whatever Umlauft did concerning Francisco "doesn't have any relevance here." ¶¶ 191-92. At the court's suggestion, the defense lawyers tried to interview Det. Rosado about this subject, but he refused. *Id.* Det. Dolan then testified that Francisco's photo had been shown to *another witness.* ¶¶ 195-96. Satisfied by these explanations, the defense lawyers, when they spoke with Umlauft one week later about another issue, did not ask him about the photocopies. ¶¶ 198-200. Umlauft did not volunteer that any identification of Francisco had occurred. ¶ 202.

Duopo was the only witness to identify Poventud or Maldonado, or to implicate them. ¶ 223. The defense emphasized the suggestive nature of the photo arrays leading to Duopo's identification of Marcos Poventud. ¶ 223. Duopo's reliability also was undermined when he twice mistakenly identified Robert Maldonado's *brother* as the second perpetrator. ¶ 210. Marcos Poventud, supported by three alibi witnesses, testified that he was at a neighbor's apartment at the time of the crime. ¶¶ 115, 221. The defendants also presented evidence that, just 17 days after the Duopo robbery-shooting, the same weapon used to shoot Duopo was recovered by police following a robbery of another livery cab driver by three unrelated individuals. Defts. 56.1 ¶¶ 38-39. During deliberations, the jury sent in notes focusing on the reliability of Duopo's identification of plaintiff, announced on the evening of the fourth day of deliberations that it was "hopelessly deadlocked," and only convicted the defendants on the evening of the fifth day. ¶¶ 224-26. Poventud was sentenced to 10-to-20 years in prison on the Class B and C violent felony convictions. Defts. 56.1 ¶ 42.

-4-

Poventud's conviction was affirmed. However, Maldonado's was reversed. In its ruling, the Court of Appeals held that an evidentiary error was not "harmless" because the evidence at trial was so weak. *People v. Maldonado*, 97 N.Y.2d 522, 530–31 (2002). Prior to Maldonado's re-trial, the new prosecutor, ADA Jeremy Shockett, summoned plaintiff to his office from his State prison cell and promised that, if he testified against Maldonado, Shockett would assist him in obtaining early release on parole. Poventud, who had no further appeals left and every incentive to cooperate, refused, telling Shockett that he was innocent and would not falsely accuse Maldonado. ¶¶ 234-36.

During Maldonado's 2003 re-trial, Shockett disclosed for the first time that Umlauft had obtained Duopo's identification of Francisco Poventud. ¶¶ 238-39. With the defense moving to dismiss the indictment due to the prosecution's previous failure to disclose this evidence, Umlauft falsely insisted to Shockett that he had disclosed it to defense counsel at the first trial and that Duopo had qualified his identification by writing a note that said, "it looks a lot like the guy."[2] ¶¶ 243-44. Umlauft could not find the note. ¶ 244. Maldonado was acquitted. ¶ 240.

On December 6, 2004, Poventud moved to vacate his conviction, pursuant to CPL § 440.10, on *Brady* grounds. ¶ 241. Umlauft submitted an affidavit and testified to the same essential story he had given at the Maldonado re-trial. ¶¶ 246, 249. Both defense lawyers testified that Umlauft's story was false. ¶ 29, 247, 251. Shockett argued Umlauft's testimony was truthful. ¶ 250. On October 6, 2005, the court credited the defense case, found that plaintiff's rights under *Brady* had been violated, vacated Poventud's conviction, and ordered the *Wade* hearing reopened. ¶ 251. Continuing to rely on Umlauft's false testimony, the People, rather than acquiesce to a new trial,

---

[2] Umlauft has given varying accounts. He has testified that Duopo said "it looks like the guy" or "it looks *a lot* like the guy," and that Duopo did (or did not) say Francisco was the shooter. Plt. 56.1 ¶ 8(c). On summary judgment, plaintiff is entitled to the inference that, if any such statement was made at all, it was the one most favorable to him: "it looks *a lot* like the guy."

filed a notice of appeal and successfully opposed Poventud's bail motion, keeping him in prison pending the appellate process. ¶¶ 253-56.

On January 30, 2006, Shockett suddenly offered Poventud his immediate release. Shockett offered to dismiss the indictment if Poventud would plead guilty to an Information containing a single E nonviolent felony charge, attempted robbery in the third degree, and accept a one-year sentence, which Poventud already had served. ¶ 58, 62, 260, 268-70. Poventud had been continually sexually and physically assaulted in prison, had tried to kill himself, and was suffering from depression and Post-Traumatic Stress Disorder. ¶¶ 263-67, 281. Fearing he would not survive additional years of incarceration awaiting the appeal, he agreed to the deal. ¶¶ 268-69. His allocution to the "facts" consisted of answering "yes," unsworn, to the court's summary of the allegations. ¶¶ 270-72.

During depositions in this lawsuit, Poventud learned for the first time that Turkin had told Shockett (who did not reveal it to plaintiff) that Umlauft had *not* told Turkin that Duopo had been shown a photo array of Francisco Poventud or had identified him. ¶¶ 274-75. Shockett, meanwhile, testified that, at the time he solicited plaintiff's guilty plea, he knew, *but did not disclose*, that his Office had determined *not* to perfect its appeal of Justice Hunter's decision because of the difficulty in overturning factual determinations by a hearing judge.[3] ¶ 278. Plaintiff then obtained a stay of this lawsuit and moved in State court to vacate his plea as involuntarily made and induced through fraud. ¶¶ 279-80. Although the court granted an evidentiary hearing on the voluntariness issue, Poventud then withdrew his motion. ¶¶ 284, 290. Defendants omit from their papers that Poventud did so only after he learned he had multiple myeloma, an incurable cancer, had nearly died from

---

[3] Other Bronx ADA-witnesses were put up to contradict Shockett, but plaintiff is entitled to rely on Shockett's testimony for purposes of summary judgment.

kidney failure after undergoing bone marrow and stem cell transplants, and was undergoing chemotherapy. ¶¶ 285-89. Plaintiff believed he could not withstand the stress and risk of re-infection inherent in testifying in court and attending a re-trial, nor could he risk any possibility of returning to jail where he would not receive the same quality care he had been receiving. ¶¶ 75, 290.

## ARGUMENT

I.  **PLAINTIFF'S AMENDED COMPLAINT STATES A VALID CLAIM AGAINST THE INDIVIDUAL POLICE OFFICER-DEFENDANTS FOR VIOLATING HIS CONSTITUTIONAL RIGHT TO DUE PROCESS AND A FAIR TRIAL AND THERE ARE DISPUTED ISSUES OF FACT THAT A JURY MUST DETERMINE**

### A.  Standard for Deciding a Motion for Summary Judgment

Summary judgment is proper only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In resolving a summary judgment motion, "the district court is to view the evidence in the light most favorable to the party opposing the motion, drawing all permissible inferences from the submitted affidavits, exhibits, interrogatory answers, and depositions in favor of that party," *Vann v. City of New York*, 72 F.3d 1040, 1048–49 (2d Cir. 1995), and "must resolve all ambiguities in favor of the nonmoving parties," *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004).

### B.  Plaintiff's First Cause of Action States a Valid Claim for Relief Under § 1983

Poventud's first cause of action asserts that the defendants, in violation of his due process rights, caused his conviction at his criminal trial, and his subsequent imprisonment, by withholding evidence favorable to plaintiff that defendants were required to disclose under *Brady v. Maryland*, 373 U.S. 83 (1963), and that Umlauft prolonged his wrongful incarceration by lying to prosecutors and the court about the circumstances of the violation. *See* Second Amended Complaint ¶¶ 115–125.

1.     **Essential Elements of a *Brady* or Due Process Claim Under § 1983**

Section § 1983 subjects to liability "[e]very person who, under color of [state law], subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights ... secured by the Constitution." 42 U.S.C. § 1983. The elements of such a claim are: (1) a person acting under color of state law; (2) committed (or caused the commission of) a constitutional violation; (3) which proximately caused; (4) damages. *See* 4 Leonard B. Sand, et al., *Modern Federal Jury Instructions: Civil* § 87.03, at 87-151 (Matthew Bender 1995); *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 150 (1970); *Miner v. City of Glen Falls*, 999 F.2d 655, 660 (2d Cir. 1993).

A *Brady* violation claim has three elements: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). Prejudice ensues when the evidence is "material," *id.* at 280–82, which is to say "whether in its absence [the defendant] received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). *See also United States v. Bagley*, 473 U.S. 667, 682 n.13 (1985) (whether, absent the *Brady* violation, "the factfinder would have had a reasonable doubt respecting guilt").

Defendants do not dispute that police responsible for a *Brady* violation are liable under § 1983 where their "failure to disclose ... exculpatory information deprived the § 1983 plaintiffs of their right to a fair trial." *Jean v. Collins*, 221 F.3d 656, 659 (4th Cir. 2000) (en banc) (citation omitted). *Accord, White v. McKinley*, 605 F.3d 525, 537–38 (8th Cir. 2010); *Newsome v. McCabe*, 256 F.3d 747, 751–52 (7th Cir. 2001).

The elements of a *Brady* violation are the same under § 1983 as in a criminal case. *See Hernandez v. Terrones*, 397 Fed. Appx. 954, 971 (5th Cir. 2010); *Zahrey v. City of New York*, No.

98-CV-4546, 2009 WL 54495, at *26 (S.D.N.Y. Jan. 7, 2009) (Pogue, J.); *Burt v. Aleman*, No. 05-CV-4493, 2008 WL 1927371, at *6 (E.D.N.Y. Apr. 30, 2008) (Gaurafis, J.).

Significantly, contrary to the premise of defendants' brief, there is no requirement that a § 1983 claimant prove his innocence. In *White v. McKinley*, 605 F.3d at 537–38, the court upheld the trial court's ruling prohibiting evidence that "would have created a mini-trial on White's actual guilt, which is not the subject of a § 1983 action. Rather, the question for the jury was whether White received a fair trial ... [and] whether McKinley [a police officer] violated White's civil rights." *See Ienco v. City of Chicago*, 286 F.3d 994, 998 (7th Cir. 2002) (no favorable termination element, in contrast to malicious prosecution).

### 2. A Reasonable Jury Could Find That Defendants Violated, Or Caused The Violation Of, Plaintiff's Constitutional Rights At His Trial

Plaintiff's Second Amended Complaint (¶¶ 115 -25) alleges a related but distinct due process claim: that Umlauft provided false information and testimony to the Bronx D.A.'s Office once the defendants' *Brady* violation was exposed in 2003, causing that Office to oppose Poventud's efforts to overturn his conviction and substantially prolonging Poventud's incarceration. *See, e.g., Napue v. Illinois*, 360 U.S. 264, 269 (1959); *Pyle v. Kansas*, 317 U.S. 213, 215–16 (1942) (knowingly causing a criminal defendant to be deprived of his liberty based upon false or misleading evidence violates Due Process); *Zahrey v. Coffey*, 221 F.3d 342, 357 (2d Cir. 2002); *Ricciuti v. City of New York*, 124 F.3d 123, 129–30 (2d Cir. 1997) (fabricating evidence or testimony violates due process). Defendants do not argue they are entitled to summary judgment on this claim. They move solely against plaintiff's *Brady* claim. However, numerous issues of fact preclude summary judgment.

Initially, defendants do not deny there is an issue of fact as to whether Umlauft disclosed the Francisco identification procedure at all to defense counsel at trial. *See* Defts. Mem. 16. Rather,

they contend that, if Umlauft withheld information, it was *only* that Duopo said, through his note, that Francisco "looks a lot like the guy." They contend such a statement was not exculpatory because Marcos and Francisco Poventud are brothers, the assumption being they looked alike. *See* Defts. Mem. 15, 19. However, Plaintiff's evidence, and all reasonable inferences therefrom, proves that there was never any such note – that Umlauft withheld evidence of a positive misidentification.

A jury could reasonably infer that Umlauft fabricated his story about the note, when his involvement in a *Brady* violation was exposed at Maldonado's re-trial, and when Poventud later brought a motion to vacate his conviction, in order to negate or minimize the significance of the disclosure violation. As we have shown, under NYPD training and practice, Duopo's signing his name next to one photo in an array indicated a positive identification. Thus, viewed by itself, Duopo's signature indicates a positive identification of the wrong man.

The only evidence there ever was any note is Umlauft's testimony. But he has never produced such a note, for anyone: not his fellow detectives, not the prosecutor, not defense counsel, not now. Umlauft, an experienced detective-sergeant, knew he was required to preserve and disclose such a note under the *Rosario* rule as the prior statement of a prosecution witness, at the very least. He knew as well that if there was any qualification of the identification, he was supposed to memorialize it in a DD5. Defendants even assert that Umlauft was subject to serious discipline for failing these obligations. Defts. 56.1 ¶¶ 104-113. A jury readily could infer, from Umlauft's failure to prepare any DD5 or to disclose the note at the first trial, that the note never existed. It could infer this as well from Umlauft's inability to ever tell the same story twice. *See supra* pp. 3–6 & n.2.

Even assuming there was a note, there would still be a fact question whether, as plaintiff and his former attorney Byrnes swear in their affidavits, plaintiff and his brother looked very different from one another, Plt. 56.1 ¶ 141, and thus whether Duopo's claim that Francisco's old photo looked

-10-

"a lot like" the perpetrator was exculpatory as to plaintiff. *See, e.g., McDowell v. Dixon*, 858 F.2d 945, 949–50 (4th Cir. 1988) (failure to disclose that victim's initial description of perpetrator differed from subsequent descriptions violated *Brady*). By withholding this information, Umlauft deprived plaintiff of his right to a jury determination of this "crucial issue." *People v. Poventud*, 10 Misc.3d 337, 341 (Sup. Ct., Bx. Co. 2005).

Defendants blame plaintiff's counsel for failing to elicit testimony about Duopo's misidentification. But Plaintiff's evidence shows that Umlauft (and Dolan) deliberately misled the prosecutor and plaintiff's counsel into believing that images of Francisco Poventud were not relevant to the trial and that Duopo had not been shown Francisco's photo. Plaintiff's counsel, meanwhile, relied on the People's statement that they understood their *Brady* obligations and would fulfill them if there was any *Brady* material, as well as on the People's purported disclosure, in their Voluntary Disclosure Form, of all police-arranged identification procedures. Plt. 56.1 ¶¶ 158-161. Plaintiff's counsel was entitled to, and did, rely upon the good faith, accuracy, and completeness of the prosecution's *Brady* and related disclosures. *See Banks v. Dretke*, 540 U.S. 668, 693 (2004); *Strickler*, 527 U.S. at 283 & n.23; *Su v. Filion*, 335 F.3d 119, 128 (2d Cir. 2003).

Next, defendants contend (Mem. 16–17) that the suppressed identification evidence involving Francisco Poventud was immaterial to plaintiff's conviction because there already was powerful evidence undermining Duopo's reliability as an identification witness, but this proves *plaintiff*'s case. The trial was so close that virtually *any* additional evidence undermining Duopo, the *only* identification witness and the *only* witness connecting Poventud to the crime, would have created a reasonable doubt and produced a more favorable outcome. Indeed, in reversing co-defendant Maldonado's conviction for evidentiary error, the Court of Appeals stressed the weak nature of the People's single-eyewitness case. And as Justice Hunter reasoned in overturning plaintiff's

-11-

conviction, "where the conviction depended on the identification by the complainant of the defendants, an identification of an individual other than the defendants ... is of great magnitude." *People v. Poventud*, 10 Misc. 3d at 340. *See Goudy v. Basinger*, 604 F.3d 394, 399–400 (7th Cir. 2010); *Cannon v. Alabama*, 558 F.2d 1211, 1215–16 (5th Cir. 1977). The suppressed information substantially undercut Duopo's *reliability* as an identification witness and the *credibility* of *all* the People's witnesses – the police detectives and Duopo – each of whom inexcusably failed to reveal the misidentification during his hearing and trial testimony. Indeed, as Justice Hunter reasoned in ordering the *Wade* hearing reopened, the withheld information related to whether Duopo's identification of plaintiff, due to suggestive procedures, should have been permitted at trial at all.

Finally, defendants maintain that any failure on their part to make a formal report concerning Duopo's misidentification was merely negligent, not knowing or willful. *See* Defs. Mem. 16. However, "[q]uestions of intent ... are usually inappropriate for disposition on summary judgment." *Nat'l Union Fire Ins. Co. v. Turtur*, 892 F.2d 199, 205 (2d Cir. 1989). Moreover, plaintiff's claim does not focus on that circumstance in isolation. The defendants' blatant violation of NYPD training and policy requiring a report must be considered together with their even more significant failures to disclose the identification at the numerous stages of the proceeding where disclosure was requested or obviously was necessary, their deliberate misleading of the prosecutor, the court, and the defense before and during trial, and Umlauft's false statements and testimony during Maldonado's re-trial and plaintiff's initial 440 motion.[4]

---

[4] The individual defendants, aside from Umlauft, do not move for summary judgment with respect to their individual roles. The evidence shows they worked closely together during their investigation. A jury could infer they shared knowledge of why, after looking to arrest Francisco, they abruptly shifted their focus to Marcos. Umlauft testified he told Dolan about showing the Francisco photo array to Duopo, but Dolan, the detective in charge, then misled everyone about this at trial. Plt. 56.1 ¶¶ 116-18, 125, 127, 132, 135-36, 142, 162-63, 173, 193, 196, 198.

### 3.      **Defendants' _Brady_ Violation Caused Plaintiff to Suffer Harm**

Consistent with ordinary tort principles, defendants in § 1983 actions are liable for harms to the plaintiff that are natural and probable consequences of their unconstitutional conduct. _See Malley v. Briggs_, 475 U.S. 335, 344 n.7 (1986) (quoting _Monroe v. Pape_, 365 U.S. 167, 187 (1961)); _Zahrey_, 221 F.3d at 349–51. This includes direct results and foreseeable indirect ones. _See Myers v. County of Orange_, 157 F.3d 66, 73–74 (2d Cir. 1998). "Proximate cause is usually a question of fact for the jury to decide." _Bellis v. Tokio Marine & Fire Ins. Co._, No. 93 Civ 6549, 2002 WL 193149, at *12 (S.D.N.Y. Feb. 7, 2002) (Batts, D.J.).

Here, a jury reasonably could find that defendants' misconduct was a substantial cause of plaintiff's conviction and original 20-year sentence, of which he served a total of nearly nine years (eight after his conviction) before his conviction was vacated. Umlauft prolonged that sentence, beginning in 2003 when the _Brady_ violation was first revealed, by manufacturing and causing the Bronx D.A.'s Office to rely upon a false explanation of the relevant events. Plt. 56.1 ¶¶ 245-250. Contrary to defendants' argument (Mem. 17), plaintiff's suffering was not "remedied" by the vacatur of his conviction, which could not give him back the eight years of his life spent in prison, nor did his plea, eight years after plaintiff's trial conviction, break the chain of causation between his trial conviction and such harm. At most, as the First Circuit reasoned in _Olsen v. Correiro_, 189 F.3d 52, 69–71 (1st Cir. 1999), any sentence that a plaintiff voluntarily "accepts" after his initial conviction has been set aside under _Brady_ may be deducted from his recovery, but he still is entitled to recover for all other damages.

## II.    _HECK V. HUMPHREY_ **DOES NOT BAR PLAINTIFF'S § 1983 CLAIMS**

### A.      _Heck_ **Does Not Apply Because Plaintiff Is Not In Custody**

Defendants argue that _Heck v. Humphrey_ bars plaintiff's § 1983 claim for monetary damages,

but they are wrong. This Court has squarely and correctly held that *Heck* does not bar the civil claim of a plaintiff who is not in State custody and therefore cannot possibly use § 1983 as a substitute for habeas corpus. *Farrell v. Burke, supra,* 2004 WL 2813175, at *5 (citing *Spencer v. Kemna,* 523 U.S. 1 (1998)). *See Wilkinson v. Dotson,* 544 U.S. 74, 81 (2005) (Breyer, J.) (same); *accord, id.* at 85 (Scalia, J., concurring).

Defendants do not cite a single authority holding that *Heck* applies even where the plaintiff is no longer in State custody. They rely heavily on *Stein v. County of Westchester,* 410 F. Supp.2d 175, 178–80 (S.D.N.Y. 2006) (Connor, Senior D.J.), in which the court dismissed a civil *Brady* claim in light of the plaintiff's guilty plea, but neither that decision, nor any other case cited by defendants, addressed the custody issue present here.

Defendants argue that the custody requirement only applies where the plaintiff was *never* in custody, but this Court's opinion in *Farrell* itself finds *Heck* inapplicable to *"former* prisoners who are *no longer* in custody." 2004 WL 2813175, at *5 (emphasis added) (citing *Huang v. Johnson,* 251 F.3d 65, 74–75 (2d Cir. 2001)("*Heck* does not bar Section 1983 actions for damages by mother of youthful offender who had been *released from custody*" [emphasis added]).

Finally, defendants contend (Mem. 10-11) that *Poventud* was required to reject the D.A.'s plea offer and remain in prison indefinitely if he wished to ever bring a lawsuit notwithstanding *Heck.* Defendants cite no case law to support this novel and extraordinarily unjust position. Nothing in the logic or holding of *Heck* requires a *Brady*-violation claimant whose conviction already has been overturned to refuse an offer of immediate release and remain in custody indefinitely so that he can obtain a complete vindication on all charges. Indeed, as we now discuss, whether he remained in custody or not, plaintiff already was free to bring a lawsuit over his unconstitutionally-

obtained trial conviction because *it already had been invalidated.*[5]

**B.**  ***Heck v. Humphrey* Does Not Bar Mr. Poventud's Claim Because the Claim Does Not Necessarily Imply the Invalidity of Any Outstanding Conviction**

The Supreme Court in *Heck* was confronted with a case quite different from this one. The plaintiff was in custody on a conviction he claimed had been obtained in violation of his due process rights. It was this "undisturbed conviction" – not, as in plaintiff's case, a former conviction that already had been invalidated – that his lawsuit challenged. *Clay v. Allen*, 242 F.3d 679, 681 (5th Cir. 2001). Analogizing to the tort of malicious prosecution, which requires a favorable termination of the prosecution, the Supreme Court reasoned that such a claimant could not succeed with his lawsuit without necessarily establishing the invalidity of his extant conviction, but this could not be permitted because Congress intended habeas corpus to be the exclusive remedy for State prisoners to challenge their convictions or sentences. The Court's holding was that a § 1983 plaintiff may not go forward with a federal constitutional claim if a judgment in his favor "would necessarily imply the invalidity of his conviction or sentence ... *unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.*" *Heck*, 512 U.S. at 487 (emphasis added). "[I]f the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any *outstanding* criminal judgment against the plaintiff, *the action should be allowed to proceed.*" *Id.* (emphasis added).

Following *Heck*, the Court held that a lawsuit (such as plaintiff's) challenging a procedural due process violation could go forward where it attacked "only the 'wrong procedures,' not ... the

---

[5] Moreover, the premise of defendants' argument – that plaintiff somehow cynically manipulated court process to set up his lawsuit – has no evidentiary support and is absurd. With Umlauft's false statements and testimony causing the D.A.'s Office to oppose plaintiff's bail and to appeal the order vacating his conviction, the D.A.'s Office induced Poventud to plead guilty by making him an offer almost no one who had been through his traumatic prison experience could possibly refuse.

wrong result,'" and the procedure being challenged was "previously invalidated." *Wilkinson v. Dotson*, 544 U.S. at 81 (internal citations omitted). *See also Wallace v. Kato*, 549 U.S. 384, 393–94 (2007) (plaintiff's Fourth Amendment claim accrued without waiting for the outcome of plaintiff's re-trial; only if the plaintiff was re-convicted and the civil suit "would impugn *that* conviction, [would] *Heck* require dismissal; otherwise, the civil action will proceed ..."[emphasis added]).

Consistent with *Heck* and its progeny, numerous federal appellate courts have held that *Heck* does not preclude a § 1983 lawsuit for damages flowing from a due process or fair trial violation so long as the conviction resulting from such violation already has been invalidated and plaintiff's success in the lawsuit would not necessarily be inconsistent with a subsequent re-conviction. *See Clay v. Allen*, 242 F.3d at 681–82 (procedural violations at trial); *Smith v. Gonzales*, 222 F.3d 1220, 1222 (10th Cir. 2000) (*Brady* violation); *Davis v. Zain*, 79 F.3d 18, 19 (5th Cir. 1996) (due process violation [prosecutorial misconduct and use of tainted evidence]); *Del Real v. Gomez*, 330 Fed. Appx. 110, 2009 WL 1283879 (7th Cir. 2009) (unpublished) (once a conviction has been set aside, "[w]hat might happen in a subsequent prosecution is neither here nor there"). *Cf. Covington v. City of New York*, 171 F.3d 117 (2d Cir. 1999) (reasoning that a false arrest claim is not barred by *Heck* where a present or future conviction would not be impugned by it). These decisions are all inconsistent with defendants' position that *Heck* requires a favorable termination of the entire criminal proceeding even where plaintiff's claim relates only to the unfairness of a trial conviction that already has been invalidated and to a sentence that already has been vacated.

*Olsen v. Correiro*, 189 F.3d at 66–71, also is on point. The First Circuit, notwithstanding *Heck*, upheld a judgment for a § 1983 plaintiff for damages caused by his initial conviction due to a *Brady* violation even though, to secure his release from custody, he later accepted a sentence of "time served." The Court held that while the "time served" sentence the plaintiff received was

coextensive with and therefore negated his claim for damages for his imprisonment, he still could recover for his attorney's fees, his mental and emotional suffering, and other consequential injuries, plus punitive damages. Poventud, unlike Olsen, was not eventually sentenced to "time served," but to one year. Thus, he still can recover for the additional years he did not "accept" as part of his plea.

This reasoning is supported by the Second Circuit's decision in *Warner v. Orange County Department of Probation*, 115 F.3d 1068, 1074 n.5 (2d Cir. 1997), in which the court rejected the defendant's argument, under *Heck*, that plaintiff could not bring a damage action for an unlawful component of his sentence when his conviction and the balance of his sentence were valid. It reasoned that the plaintiff's "guilt is in no way incompatible with his claim." Poventud's plea and sentence similarly are not "incompatible" with his claim for damages for the additional years he spent in prison due to his original conviction.

Virtually all of the cases the defendants cite at pp. 4-7 of their Memorandum involve the disallowing of malicious prosecution claims because of the favorable termination requirement, not *Brady* claims. *See, e.g., DiBlasio v. City of New York*, 102 F.3d 654 (2d Cir. 1996) (*Heck* precludes malicious prosecution claim that is inconsistent with plaintiff's re-conviction). While defendants cite several seemingly relevant district court decisions, all are distinguishable, not only because the plaintiffs still were in custody, but also because, unlike Poventud, they had been re-convicted on the same charges and were serving sentences that far exceeded the time they had served on their invalidated convictions. *See, e.g., Brooks v. Worthy*, 2011 WL 1748544 (E.D. Mich. May 2, 2011); *Jackson v. Barnes*, 2009 WL 1096276 (C.D. Cal. April 21, 2009); *Somerville v. Hagood*, 2002 WL 31246773 (N.D. Tex. Aug. 12, 2002). Moreover, all the plaintiffs were *pro se* and the courts dismissed their lawsuits on numerous grounds, such as prosecutorial immunity and failure to state a claim, reaching the *Heck* issue in *dictum* and without adequate briefing about the distinction

-17-

between malicious prosecution and due process/fair trial claims.

As for the court's decision in *Stein*, it misconstrues *Heck* as well as the nature of a procedural due process or fair trial claim. Judge Connor assumed that a plaintiff's quest for damages for prison time served *beyond the time* accepted by a subsequent guilty plea "nevertheless imputes an illegitimacy to her plea and sentence." 410 F. Supp.2d at 179. But *Heck* did not adopt an "imputes-an-illegitimacy-to" standard, but prohibits only a claim that "necessarily implies the invalidity" of a conviction or sentence. *Heck*, 512 U.S. at 487. As the Circuit Court cases we have cited hold, a *Brady* violation or fair trial claim seeking damages arising from an already-vacated, unconstitutional conviction is not "necessarily inconsistent" with a subsequent conviction and lesser sentence. Plaintiff's claim for eight years imprisonment (and other damages), less the one year he "accepted" through his guilty plea, is not "necessarily inconsistent" with that plea.

Finally, defendants make the strange argument that *no* claimant may *ever* bring a *Brady* violation claim under § 1983. *See* Defendants' Point II. This would be a surprise to the Supreme Court, which just this Term, in *Connick v. Thompson*, 131 S. Ct. 1350, 1360–64 (2011), held that a *Brady* violation claim could be brought against a municipality so long as a failure-to-train claim was proven by a pattern of prior similar violations. *See Walker v. City of New York*, 974 F.2d 293, 300–01 (2d Cir. 1992)*, and Baba-Ali v. City of New York*, 979 F. Supp. 268 (S.D.N.Y. 1997) (Batts, D.J.) (upholding *Brady* claims against municipalities); cases cited at p. 8, *supra* (upholding *Brady* claims against individual police). Defendants misconstrue *Skinner v. Switzer*, 131 S. Ct. 1289, 1298–1300 (2011) (*dictum*), and *Amaker v. Weiner*, 179 F.3d 48, 51–52 (2d Cir. 1999), which reason that a *Brady* claim that would invalidate an *extant conviction* may not proceed. Neither case requires the same result where the conviction at issue already has been judicially invalidated.

### III.    COLLATERAL ESTOPPEL DOES NOT BAR PLAINTIFF'S INNOCENCE CLAIM

If defendants are correct that, as a matter of law or policy, plaintiff must establish his complete innocence to prevail on his claim that defendants violated his constitutional right to due process and a fair trial, the equitable doctrine of collateral estoppel, under New York law, is not a bar for the following reasons:

(1)    **Lack of Comparable Incentive to Litigate**:  Plaintiff was traumatized by his prior imprisonment, *see* Plt. 56.1 ¶¶ 73, 263, 267, 281, 283, and had an overwhelming incentive not to litigate his innocence and instead to accept a highly favorable guilty plea.  *See Sullivan v. Breese*, 160 A.D.2d 997, 998 (2d Dept. 1990) (no estoppel due to guilty plea); *Davis v. Hanna*, 97 A.D.2d 943, 944 (2d Dept. 1990) (same) (citing *Vavolizza v. Krieger*, 33 N.Y.2d 351, 356 (1974) (distinguishing, for estoppel purposes, between a trial conviction and a guilty plea)); *In re Bach's Estate*, 81 Misc. 2d 479, 483–84 (N.Y. Sur. 1975) (same). *See generally Ryan v. N.Y. Tele. Co.*, 62 N.Y.S2d 494, 500–01 (1984) (analyzing the "realities of the prior litigation," including a party's actual interest in "fully litigating the determination which is now asserted against him").[6]

(2)    **Third-Party Estoppel**:  It is unfair to permit the defendants, who were not parties to the criminal litigation, to use estoppel offensively. *See Breese*, 160 A.D.2d at 998.

(3)    **Defendants Have Unclean Hands**:  Defendants may not invoke equitable estoppel principles where they have "unclean hands."  *See Pennecom B.V. v. Merrill Lynch & Co.*, 372 F.3d 488, 493 (2d Cir. 2004) (citing New York law). Here, defendants brought about plaintiff's desperation to accept the plea by withholding evidence and thereby causing his eight-year imprisonment. Umlauft, by giving false statements to the D.A. and false testimony at the 440 hearing, caused the D.A.'s office to successfully oppose plaintiff's release on bail and to file an appeal of the 440 decision. These circumstances impelled Poventud to give up litigating his innocence.

(4)    **Prior Judgment Procured by Fraud**:  Defendants may not estop plaintiff based upon a prior judgment that was "procured by collusion or fraud." *Kelleran v. Andrijevic*, 825 F.2d 692, 694 (1987) (citing New York law). Plaintiff was deceived into pleading guilty by Shockett's withholding of information. *See* p. 6, *supra*.

---

[6] *See also United States v. Gregg*, 463 F.3d 160, 166 (2d Cir. 2006) (recognizing under New York law that a highly favorable guilty plea may give the litigant "no incentive whatsoever to litigate" and therefore may not carry estoppel effect); *Sanchez v. Bellefeuille*, No. 90-CV-1081, 1992 WL 88050, at *3 (N.D.N.Y. Apr. 27, 1992) (denying estoppel sought offensively by non-party to the criminal litigation, where the criminal defendant had lacked a comparable incentive to litigate); *but see Brennan v Mead*, 81 A.D.2d 821 (2d Dept.) (finding estoppel without any analysis), *aff'd*, 54 N.Y.2d 811 (1981) (without opinion).

(5)     **Newly-Available Evidence**: There is significant new evidence – Turkin's statement about Umlauft and the D.A.'s decision to abandon his appeal – which Poventud previously lacked reasonable opportunity to discover and which would have affected his decision to plead. *See Khandhar v. Elfenbein*, 943 F.2d 244, 249 (2d Cir. 1991).

## IV.     PLAINTIFF STATES A VALID CLAIM FOR MUNICIPAL LIABILITY AND THE EVIDENCE SHOWS FACTUAL ISSUES PRECLUDING SUMMARY JUDGMENT

Defendants rely on the holding in *Connick v. Thompson*, that a § 1983 plaintiff must establish prior similar *Brady* violations to make out a *Monell* claim that a municipal policymaker was on notice of an obligation to *train* prosecutors in their *Brady* obligations. But *Connick* has no bearing on this case, in which plaintiff principally relies on the distinct theory of failure to *discipline*. Discovery in this case shows that the policymaker's indifference, unlike in *Connick*, was not to training, but to repeated *violations* of training, thereby fostering a "condoned custom," *Spell v. McDaniel*, 824 F.2d 1380, 1389–91 (4th Cir. 1987), or an "atmosphere of lawlessness," *Smith v. City of Fontana*, 818 F.2d 1411, 1420 n.13 (9th Cir. 1987), which devalued the training that the officers had received and encouraged constitutional violations.[7]

In general, a plaintiff under *Monell* must prove "that the violation of his constitutional rights resulted from a municipal custom or policy." *Vann*, 72 F.3d at 1049. "[W]here a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a 'deliberate choice,' that acquiescence may 'be properly thought of as a city policy or custom that is actionable under § 1983.'" *Amnesty America*, 361 F.3d at 126 (Sotomayor, J.) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

A policy of deliberate indifference may "be drawn from circumstantial proof," such as a failure to train "*or* [emphasis added] evidence that the municipality had notice of but repeatedly

_____

[7] Plaintiff's Complaint does also allege lack of training, but, in light of discovery, including the 30(b)(6) depositions conducted of representatives of the Police Department, plaintiff will rely at trial on the separate theory of failure to discipline and supervise.

-20-

failed to make any meaningful investigation into charges that police officers ... [acted] in violation of the complainants' civil rights." *Ricciuti v. N.Y.C. Transit Authority*, 941 F.2d 119, 123 (2d Cir. 1991). *See Vann*, 72 F.3d at 1049 ("no meaningful attempt on the part of the municipality to investigate or to forestall further incidents"); *Gentile v. County of Suffolk*, 926 F.2d 142, 153 (2d Cir. 1991) (officials "consistently ignore[d] evidence of misconduct"); *Fiacco v. City of Rensselaer*, 783 F.2d 319, 329 (2d Cir. 1986) (City had appropriate disciplinary procedures but "declined to implement them").

*Connick*'s requirement, in a  failure-to-train case, of prior similar misconduct providing notice to the policymaker of a need for specific training, does not apply with the same force in a failure-to-discipline case. In a deficient-discipline case, officers' perception that "anything goes" and nothing will be punished will encourage all sorts of misbehavior, and thus the requirement that the prior incidents be "similar" will not be as strict. *See Vann*, 72 F.3d at 1050 (upholding reliance, in a police brutality case, of "evidence of the Department's general methods of dealing with *problem policemen ...*") (emphasis added); *Gentile*, 926 F.2d at 146 (upholding plaintiff's reliance, in a police brutality case, on an official report documenting that the authorities "had tolerated and even ratified employee misconduct ... in *several different areas of criminal law*" (emphasis added)); *Spell v. McDaniel*, 824 F.2d at 1400–01 (in police brutality action, upholding reliance on evidence of arrest quotas and of the toleration of sexual discrimination and harassment to prove "an atmosphere of aggressive and lawless behavior").

There is no set number of incidents of acquiescence in or failure to discipline employee misconduct needed to show an unlawful policy of deliberate indifference to unconstitutional behavior. *See, e.g., Amnesty America*, 361 F.3d at 127–29 (two prior similar incidents); *Disorbo v. Hoy*, 74 Fed. Appx. 101, 2003 WL 22037275, *3 (2d Cir. 2003) (unpublished) (*one* prior incident);

*Fiacco*, 783 F.2d at 329–32 (five incidents in a two-year period); *Baba-Ali*, 979 F. Supp. at 274 (Batts, D.J.) (nine *Brady* violations over many years).

Finally, plaintiff need not prove that a municipal policy, custom, or practice was the sole cause of harm, just that it was a "substantial factor." *Hydro Investors, Inc. v. Trafalgar Power, Inc.*, 227 F.3d 8, 15 (2d Cir. 2000). A causal link to an employee's unlawful conduct may be "implied" from "the City's policy of inaction," *Gentile*, 926 F.2d at 152–53 (quoting *Batista v. Rodriguez*, 702 F.2d 393, 398 (2d Cir. 1983)), where it was reasonably foreseeable that such a policy would "contribute to [an officer's] 'independent' decision" to engage in unconstitutional conduct. *Higazy v. Templeton*, 505 F.3d 161, 177 (2d Cir. 2007) (quoting *Zahrey*, 221 F.3d at 352). "Foreseeability" is a fact issue. *Warner*, 115 F.3d at 1073 (as amended).

In this case, a jury would be entitled to infer that it was reasonably foreseeable to City policymakers that their indifference to notice of apparent misbehavior by police officers and detectives relating to their constitutional obligations to record, preserve, and disclose evidence potentially favorable to criminal defendants would cause some police detectives, including the present defendants, to violate such defendants' constitutional rights. Plaintiff's proof of such a policy includes the following:

I.     Thirteen court decisions finding that police officers destroyed or suppressed evidence actually or likely to be favorable to criminal defendants. Plt. 56.1 ¶ 293.[8] In not a single instance did the NYPD investigate or discipline the officers involved. ¶ 294. Eleven of these decisions were handed down before plaintiff's trial in 2008, ¶ 293,[9]

---

[8] Defendants are correct (Mem. 22 n.9) that, in Ex. C, to the Second Amended Complaint, two of the cases, upon which we no longer rely, were listed by mistake. The other cited decisions involved evidence actually or potentially favorable to the defendant which was withheld or destroyed, although some of the decisions were not decided on constitutional grounds.

[9] Defendants (Mem. 22-23) wrongly focus on the date of plaintiff's *arrest*, as opposed to his trial, in trying to minimize the number of cases that preceded the *Brady* violation in this case. *Brady* is a *trial* right. Defendants' suppression did not ripen into a true constitutional violation until trial.

while two occurred in 2002, while the police-defendants continued to affirmatively conceal their *Brady* violation, *id.*[10]

II.    Seven civil lawsuits, alleging police violated disclosure obligations, manufactured evidence, or gave false testimony or statements, which were resolved in the plaintiffs' favor either by verdict or settlement exceeding $15,000. ¶ 295.[11]  In not a single instance did the NYPD investigate or discipline the officers involved. ¶ 296.

III.   Sixteen additional civil settlements exceeding $15,000 in cases alleging that police officers initiated prosecutions without probable cause or otherwise violated the constitutional rights of the accused (demonstrating an overall culture of indifference to constitutional violations affecting the liberty interests of suspects). None of the officers were investigated or disciplined. ¶¶ 297-98.

IV.    The admission by the City's representative witness that he is unaware of a single specific instance in which any police officer was investigated or disciplined for withholding, destroying, or fabricating evidence or testimony, and that no records are kept of such categories of misconduct. ¶¶ 299, 301-02.

V.     Findings by the N.Y.C. Comptroller in 1992 that the NYPD had inexcusably failed, despite receiving "claims and lawsuits, as well as civilian complaints, to ... take appropriate follow-up action." ¶¶ 303, 306.  *See, e.g., Gentile*, 926 F.2d at 151-52 (such official reports are admissible to show notice of and indifference to prior incidents of misconduct and thus the existence of "an established practice or policy").

VI.    Subsequent findings by the Comptroller in 1999, and the Bar Association of the City of New York in 2000, that, despite the notice provided by the aforementioned 1992 report, the NYPD still had taken no steps to follow up civil complaints and settlements to prevent recurrences. ¶¶ 304-05.

VII.   The failure of NYPD to investigate or discipline any of the defendant-police officers in this case after their misconduct was repeatedly exposed. ¶ 292.

―――――――――――――――

[10] Contrary to defendants' argument (Mem. 23), "post-event evidence . . . is highly probative" to prove an unlawful policy or custom. *Henry v. County of Shasta*, 132 F.3d 512, 519 (9th Cir. 1997). *See Bordanaro v. McLeod*, 871 F.2d 1151, 1166–67 (1st Cir. 1989); *Grandstaff v. City of Borger*, 767 F.2d 161, 171 (5th Cir. 1985); *W.R. Grace & Co. v. Zotos Int'l, Inc.*, No. 98-CV-838S, 2004 WL 5669337, at *2 (W.D.N.Y. May 14, 2004).

[11] Defendants (Mem. 23) argue that a mere filing of a civil complaint does not give notice of misconduct, but all the cases we cite involved a judgment of at least $15,000, indicating a likelihood of misconduct and giving notice of a need to at least investigate the possibility.

## V.     DEFENDANT UMLAUFT IS NOT ENTITLED TO QUALIFIED IMMUNITY

Defendant Umlauft alone moves for summary judgment based on qualified immunity.  He does not challenge that plaintiff relies on a clearly established constitutional right, but contends that his failure to disclose the Duopo identification procedure was objectively reasonable.  However, he fails to meet his heavy burden to establish that he is entitled to summary judgment on qualified immunity as a matter of law.  *See generally Frank v. Relin*, 1 F.3d 1317, 1328 (2d Cir. 1993).

Umlauft maintains that it was reasonable for him not to disclose Duopo's identification of Francisco Poventud if it was not positive, but it is a jury question whether the misidentification was positive or not.  *See* pp. 9–10, *supra*.  Even if a jury determined that Duopo wrote, "it looks a lot like the guy," it still would have to decide whether Umlauft knew this was an exculpatory statement because Marcos Poventud did not resemble the seven-year-old photo of his brother Umlauft had shown to Duopo.  *See* pp. 10–11, *supra*.   Umlauft maintains that at most he was negligent and did not deliberately withhold evidence, but this too is a jury question.  *See* p. 12, *supra*.  Unquestionably, if "he deliberately withheld information, seeking to misdirect or mislead the prosecutors and the defense," he would not be entitled to qualified immunity.  *Newsome v. McCabe*, 260 F.3d 824, 825 (7th Cir. 2001) (per curiam) (denying pet. for reh.) (citing *Johnson v. Jones*, 515 U.S. 304 (1995).  *See White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008).

## VI.     PLAINTIFF'S NEGLIGENT DISCIPLINE CLAIM IS VALID

Defendants ask the Court to dismiss plaintiff's Third Cause of Action (negligent hiring, training, supervision, and discipline), arguing that, if the defendant-officers were acting within the scope of their employment, the claim fails.  *See* Defts. Mem. at 24–25.  However, their Answer, at ¶ 13 (dated Jan. 14, 2011) (Doc. 48), denies they were so acting.  Moreover, under New York law, there is no inherent requirement that a negligent hiring/supervision claim be premised on conduct

-24-

*outside* the scope of employment. *See Hall v. Smathers*, 240 N.Y. 486, 490 (1925) (plaintiff could

maintain that employee acting "*within* the scope of his authority for the [employer]" was personally

liable *or* that the employer was liable for negligent hiring) (emphasis added). Later New York cases

hold that, in a negligent supervision case, the plaintiff must demonstrate that the defendant acted

*outside* the scope of his employment because otherwise such a claim would be superfluous: the

employer would be liable anyway under *respondeat superior* for an employee's negligence *within*

the scope of his employment. *See, e.g., Eifert v. Bush*, 27 A.D. 2d 950, 951 (2d Dept. 1967). Where,

as in this case, there is no redundancy because plaintiff is unable, under §1983, to assert a *respondeat*

*superior* claim, a negligent supervision claim "provides a remedy to injured third parties who would

otherwise be foreclosed from recovery ..." 30 C.J.S. Employer-Employee § 202.

## CONCLUSION

Defendants' motion for summary judgment should be denied.

Respectfully submitted,

_____          _____
JOEL B. RUDIN, ESQ.                JULIA P. KUAN, ESQ.
Law Offices of Joel B. Rudin       Romano & Kuan, PLLC
200 West 57th Street, Suite 900    100 Lafayette Street, Suite 401
New York, New York 10019           New York, New York 10013
(212) 752-7600                     (212) 274-0777
Email: jbrudin@aol.com             Email: julia.kuan@romanoandkuan.com

*Attorneys for Plaintiff*

Dated:        New York, New York
              July 25, 2011

-25-